IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LAUFEN INTERNATIONAL, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) 2:10-cv-199 |
| v | ) |
| | ) |
| LARRY J. LINT FLOOR & WALL COVERING, | ) |
| CO., INC., | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER OF COURT

Pending now before the Court are three motions in limine (Doc. ## 58, 60, and 62) filed by Plaintiff Laufen International, Inc. ("Laufen"), as well as briefs in support to each respective motion (Doc. ## 59, 61, and 63). Defendant Larry J. Lint Floor & Wall Covering Co., Inc., ("Lint Tile") has opposed each motion with the filing of DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTIONS IN LIMINE at Doc. # 66. The motions are ripe for disposition. For the reasons that follow, the Court will grant Doc. ## 58 and 62, and deny Doc. # 60.

## STATEMENT OF THE CASE[1]

This case is a commercial breach of contract action involving the sale of goods.[2] Trial is scheduled to commence on May 7, 2012, and Plaintiff filed the instant motions in limine seeking

---

[1]     The Court detailed the factual and procedural background of this case in its Memorandum Opinion and Order dated January 11, 2012, Doc. # 52. Because familiarity with that Memorandum Opinion and order is presumed, this section is limited to the facts relevant to the disposition of the instant motions.

[2]     Originally, the complaint also contained claims sounding in tort stemming from allegations involving two individually named Defendants. Following this Court's determination on Defendants' motions for summary judgement, those individual Defendants were granted summary judgment as to the tort claims, and all that remains is the breach of contract claim and counterclaim. *See* Doc. No. 52.

to exclude various evidence.

## LEGAL STANDARD

A motion in limine is a pretrial motion which requests that the Court prohibit opposing counsel from referring to or offering evidence on matters prejudicial to the moving party. *See, e.g., Emcore Corp. v. Optium Corp.*, Civ. A. No. 7–326, 2009 U.S. Dist. LEXIS 96305, *2, 2009 WL 3381809 (W.D.Pa. Oct. 16, 2009) (quoting Black's Law Dictionary 1013 (6th ed.1990)). The purpose of such motion is to avoid injecting into trial matters which are irrelevant, inadmissible, and prejudicial. *Id.* at *2–3. In other words, motions in limine narrow the evidentiary issues for trial and eliminate unnecessary trial interruptions. *Id.* at *3 (quoting *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1069 (3d Cir.1990)).

The instant motions in limine seek to exclude evidence on the basis of relevance or prejudice. Rule 402 of the Federal Rules of Evidence provides that "[r]elevant evidence is admissible unless any of the following provides otherwise: the United States Constitution; a federal statute; these rules; or other rules prescribed by the Supreme Court. Irrelevant evidence is not admissible." Fed.R.Evid. 402. Under Rule 401, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed.R.Evid. 401. Pursuant to the balancing test of Rule 403, a court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed.R.Evid. 403.

## ANALYSIS

The Court will address each of Plaintiff's motions in limine *ad seriatim*.

A.      Doc. # 58

In its motion, Plaintiff contends that the Court should construe the marketing support agreement between the parties as requiring Defendant to purchase a minimum of $2,500,000.00 of tile in order to receive the marketing support itemized in the agreement.  Defendant, on the other hand, contends that such an order requirement is an ambiguous term, and therefore, cannot be decided as a matter of law.  Doc. # 66 (citing *Compass Technology, Inc. v. Tseng Laboratories, Inc.*, 71 F.3d 1125, 1131 (3d Cir. 1995)).  Defendant's point is well taken, at least in part, and it is appropriate to consider Plaintiff's request with precision in order to identify what it is, and what it is not, requesting.

Plaintiff Laufen International, Inc. ("Laufen") is a manufacturer of tile and has its principal place of business in Miami, Florida.[3]  Doc. No. at ¶ 1.  Defendant Lint Tile is a wholesaler and distributer of tile and has its principal place of business in Westmoreland County, Pennsylvania.  *Id.* at ¶ 2.  The claim contained in the complaint and the counterclaim occurred in the course of the commercial relationship between the parties that began in 2007.  On or about March 25, 2007, Defendant Lint Tile submitted a credit application to Plaintiff in order to establish the ability to purchase Plaintiff's tiles and other goods on credit.  At the time, John Popely was employed by Plaintiff, and handled the Lint Tile account.  In the course of conducting those responsibilities, Popely would communicate with Edward Lint, who manages

---

[3]      Laufen International, Inc., is one of several companies owned by a Spanish company called Roca Tile Group.  Doc. # 42 at ¶ 1.  At some point during the 1990s, Plaintiff Laufen acquired United States Ceramic Tile, an Ohio-based ceramic tile manufacturing company.  *Id.* at ¶ 2.  Thereafter, Roca acquired Laufen in 1999.  Doc. # 48 at ¶ 2.

Lint Tile and is the son of Larry J. Lint, the owner of Defendant Lint Tile.  As a Laufen employee, Popely reported to Jorge Torres, the company's vice president of sales.  Throughout 2007, Plaintiff and Defendant maintained a number of commercial arrangements, including the purchase and shipment of tile orders beginning in and around May 2007.  Additionally, and directly at issue in the matter *sub judice*, Plaintiff and Lint Tile allegedly reached a marketing support agreement on or about June 28, 2007.

The terms of the June 28, 2007 agreement between Laufen and Lint Tile are at the heart of the breach of contract dispute.  In terms of the actual format of the agreement, it was apparently a single page document that was exchanged between the parties via facsimile transmission, and was signed by Popely on behalf of Plaintiff.  Popely described the agreement as follows, that Lint Tile "was going to purchase so much material, in return [Plaintiff] was going to supply him some merchandising material."  *See* Doc. # 48, Popely Depo. Tr. at Tr. p. 35.  An issue in this case stems from different versions of that writing that were included within the evidentiary record at the summary judgment stage purportedly evincing the agreement, and the parties disagreement over which particular document memorialized the actual agreement.  There is no dispute, however, that in either "version" of the agreement, Laufen offered several types of merchandising material support to Lint Tile, such as the purchase and installation of display racks in the Lint facility, and 500 sets of tile sample boards to display the various types of Laufen tile to be sold by Lint Tile under Lint Tile's own brand name.  The display racks were installed at Lint Tile at an alleged cost to Plaintiff of $300,000.00.  The sample boards, on the other hand, required more time to produce, and were manufactured by a third-party corporation, Brown Industries, Inc., in Georgia.

4

Plaintiff identifies a specific document that had been signed by Popely which sets forth a

number of terms constituting the agreement (identified within the evidentiary record as Popely

Deposition Exhibit 1, or "Popely Exhibit 1").  *See* Doc. # 48, Laufen's Response to Lint's

Concise Statement of Material Facts at ¶ 20; *see also*, exhibit 12 to Laufen Response.  During his

deposition, Popely identified Popely Exhibit 1 as the written agreement.  The Court notes that the

upper segment of Popely Exhibit 1 contains the following:

```
ORDER
$                              2,500,000
                                          New Offer
                             Description        Estimated Value
Pricing                      No discount
Merchandising                500 nicer displays    $500,000
Additional Marketing Support (rebate)  10%         $250,000
Terms                        5%                     $64,167
--------------------------------------------------------------------------------
Total Promotion Value                              $814,167
% of First Order                                   32.6%
% of Proj. One Year Sales                          17.6%
```

*Id.*  Below this upper segment of the agreement, the following type-written terms were included:

> Orders that are shipped out of Roca warehouses Lint Tile will only charged $150

> Roca will pay for racking system (Lint Tile will Give Roca Invoice)  $25,000 to $30,000

> Roca will honor the 5% rebate for 1 year from the date of invoice

> Roca will pay for a trip for Larry Lint which would be used within 1 year.  Hunting Trip $20,000 to $30,000

> Roca will co-op 50% of a sale training seminar

> If Lint Tile places the USCT orders by June 29 no later than 3:00 PM Roca will by [sic] Lint Tile a $25,000 Truck

> This proposal is final and Roca will not RENEGE

Doc. # 48, Exhib. 12 to Plaintiff's Response to Lint Concise Statement of Material Facts

("Popely Exhibit 1").

Defendant Lint Tile, on the other hand, identifies an alternative version of the agreement, referenced throughout the record as Lint Deposition Exhibit 4 ("Lint Exhibit 4"), as being the actual agreement. *See* Doc. # 55, Defendant's Pretrial Statement at Exh. B (a copy of which was included in Defendant's filings as part of the evidentiary record at summary judgment). Similar to Popely Exhibit 1, Lint Exhibit 4 is generally organized into upper and lower segments. *See* Doc. # 39, Lint Exhibit 4, attached to Lint's Concise Statement of Material Facts at exhibit 5. The upper segment of Lint Exhibit 4 is identical to the upper segment of Popely Exhibit 1. The lower segment of Lint Exhibit 4, however, does not include the same listing of typed terms; instead, it reflects the following three typed terms, followed by four handwritten terms allegedly written by Popely:

> All prices at East Coast prices, but delivered to Pittsburgh Container Yard.
>
> 500 displays will be used for several years as new Lint Tile program. For return on investment one year consider [sic]
>
> Interest rate considered at 5%.
>
> `Roca will pay for Racks for the Roca Room.  30,000`
>
> `Co-op a training Seminar which will be held soon.`
>
> `Hunting trip for Larry to be determined at later date. Aprox. [sic] 20,000 - 30,000.`
>
> `5% rebate for payment within 1 year of the date receiving material`

*Id.* Under these terms was additional language, presumably handwritten by Lint, that to that term the following: "of displays and samples not tile  6-26-07  Ship display first." *Id.* Lint Exhibit 4

allegedly bears the signature of Popely.[4]

Generally speaking, there is little variation between the handwritten terms of Lint Exhibit 4 and the typed language of Popely Exhibit 1, as both contain references to a racking system, a 5% rebate, and a hunting trip for Defendant Lint's father Larry. The significant difference between the two is the handwritten addendum to the 5% rebate term of Lint Exhibit 4 in which Edward Lint included language regarding Plaintiff's obligation to ship the displays and samples before the one year time frame within which the rebate would accrue.

With its motion at Doc. # 58, Plaintiff contends that the merchandising support agreement between the two parties included a threshold purchase amount of $2,500,000.00 of tile to be ordered by Defendant in order to receive certain incentives and merchandising support. Defendant opposes Plaintiff's motion on the basis that the term was ambiguous and that there is an issue of fact whether there was a meeting of the minds because Edward Lint testified during his deposition that "there was never talk about how big the order was supposed to be." Doc. # 66 (referencing the summary judgment record).

It is well settled that the goal of contract interpretation is to discover the parties' objective mutual intent. Under Pennsylvania law "'[i]t is firmly settled that the intent of the parties to a written contract is contained in the writing itself.'" *Samuel Rappaport Family Partnership v.*

---

[4]      Defendant Lint Tile's counterclaim against Plaintiff is predicated upon these handwritten terms, especially the language written by Edward Lint himself purportedly prior to the agreement being reached. According to Edward Lint, "I wrote on the paper that Lint Tile's payment to [Plaintiff] was not due until one year after receiving 'displays and samples not tile.'" Doc. # 39-9, Lint Affidavit. Edward Lint also testified as to his understanding under the agreement that he was "supposed to buy tile, they were supposed to give me 500 sets of boards, 500 sets of samples, I pay for everything after I receive all my sample boards and displays. A year after I received the sample boards and displays, I pay for them. Case closed, that's the deal." Doc. # 50, Depo. Tr. of Lint at Tr. p. 49.

*Meridian Bank*, 441 Pa.Super. 194, 657 A.2d 17, 21 (1995) (quoting *Krizovensky v. Krizovensky*,

425 Pa.Super. 204, 624 A.2d 638, 642-43 (1993)); *see also Hullett v. Towers, Perrin, Forster &*

*Crosby, Inc.*, 38 F.3d 107, 111 (3d Cir.1994) ("Pennsylvania courts apply the 'plain meaning

rule' of interpretation of contracts which assumes that the intent of the parties to an instrument is

'embodied in the writing itself....'")(citation omitted).  Thus, where, as here, the parties have

reduced their agreement to writing, Pennsylvania courts presume that the parties' mutual intent

can be ascertained by examining the writing.  Only where the writing is ambiguous may the

factfinder examine all the relevant extrinsic evidence to determine the parties' mutual intent.

*Allegheny Int'l, Inc. v. Allegheny Ludlum Steel Corp.*, 40 F.3d 1416, 1424 (3d Cir.1994).

Therefore, as a preliminary matter, courts must "'determin[e] as a matter of law which category

written contract terms fall into-clear or ambiguous.'"  *Id.* (citation omitted). As the Court of

Appeals for the Third Circuit has noted, there are two kinds of ambiguity, patent ambiguity and

latent ambiguity:

> a patent ambiguity is that which appears on the face of the instrument, and arises
> from the defective, obscure, or insensible language used.  Black's Law Dictionary 105
> (rev. 4th ed. 1968).   In contrast, a latent ambiguity arises from extraneous or
> collateral facts which make the meaning of a written agreement uncertain although
> the language thereof, on its face, appears clear and unambiguous.

*Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 613-14 (3d Cir. 1995)(internal

quotations and citation omitted).

> Because of Pennsylvania's presumption that the writing conveys the parties' intent:

> [a] contract will be found ambiguous if, and only if, it is reasonably or fairly
> susceptible of different constructions and is capable of being understood in more
> senses than one and is obscure in meaning through indefiniteness of expression or
> has a double meaning.  A contract is not ambiguous if the court can determine its
> meaning without any guide other than a knowledge of the simple facts on which,

from the nature of the language in general, its meaning depends; and a contract is not rendered ambiguous by the mere fact that the parties do not agree on the proper construction.

*Id*.  (internal quotations omitted).

Pennsylvania law permits courts to examine certain forms of extrinsic evidence in determining whether a contract is ambiguous. But lest the ambiguity inquiry degenerate into an impermissible analysis of the parties' subjective intent, such an inquiry appropriately is confined to determining "the parties' linguistic reference."  *Mellon Bank, N.A. v. Aetna Business Credit, Inc.*, 619 F.2d 1001, 1011 n. 12 (3d Cir.1980).  In other words, "extrinsic evidence may be utilized to demonstrate the existence of a latent ambiguity."  *Meridian Bank*, 657 A.2d at 22 (citing *Lohmann v. Piczon*, 338 Pa.Super. 485, 487 A.2d 1386 (1985)).  The Third Circuit has provided a perfect illustration of this point with its decision in *Mellon Bank*, noting that a written contract referred to $10,000, and yet, unless the court looked at extrinsic evidence, it may not have learned that the parties were referring to Canadian rather than American dollars.  619 F.2d at 1011 n. 12.  In making ambiguity determinations, then, courts "'consider the words of the contract, the alternative meaning suggested by counsel, and the nature of the objective evidence to be offered in support of that meaning.'"  *Hullett*, 38 F.3d at 111 (citation omitted).

Here, the words of the contract, at least in terms of this challenged language, do not present a patent ambiguity.  Either document propounded by the parties contains the explicit term at the top of the page, "Order $2,500,000".  Such a term is clear, is neither obscure or insensible language, and does not require any additional knowledge to determine its meaning.  The fact that Edward Lint testified that he did not understand that express term to actually mean that Defendant was expected to order $2.5 million dollars of tile under the agreement is little more

9

than an attempt to draw the Court's analysis into an impermissible consideration of subjective intent.  At the same time, however, while the Court finds that either version of the contract required Defendant to purchase an amount of tile ($2.5 million), the contract does not specify a time period within which such tile orders must have been placed, nor what orders by Defendant may be included within that requisite amount.  In other words, the Court is not ruling upon whether Defendant satisfied said term under the agreement, only that the language of the agreement itself did include a term requiring a purchase of $2.5 million.

B.      Doc. # 60

Plaintiff next argues that Defendant should be precluded from presenting Lint Exhibit 4 on the basis that the authenticity of said document has been challenged, and that Defendant has yet to produce the original.  Essentially, Plaintiff challenges Defendant's version of the agreement by questioning its authenticity, and more specifically alleges that it was fabricated after the payment dispute arose.

According to Plaintiff, a question arose within the company regarding Defendant's failure to pay the invoices for tile that had been shipped.  On November 15, 2007, Edward Lint emailed a version of Lint Exhibit 4 (Defendant's purported version of the agreement) to Laufen employee Jenn Turowski (the details of which are set forth in an affidavit from Laufen employee Jason Incarnato, an IT Systems Manager who conducted a search of Plaintiff's email system during discovery).  *See* Doc. # 48 at exhibit 14, affidavit of Jason Incarnato.  The attachment to that email appeared to be a color scan of a two page document, the first page of which was Popely Exhibit 1, and the second page was an unsigned version of Lint Exhibit 4.  *Id*.  Incaranto's affidavit, which included printed copies of the email message itself as well as the two page

attachment to the email, has been included in Plaintiff's Pre-Trial Statement as a proposed

exhibit.  *See* Doc. # 54 at ¶ E.13.

In its own motion in limine (Doc. # 57), Defendant sought to preclude the testimony of

Incarnato as not relevant.  The Court denied that motion without prejudice.  *See* Doc. # 73.

Plaintiff attempts to preclude Defendant from introducing Lint Exhibit 4 at trial as a sanction by

the Court on the basis that the original has not been produced by Defendant despite having been

requested in discovery, or, alternatively, that Defendant not be permitted to introduce a copy of

Lint Exhibit 4 under the Best Evidence Rule, which restricts the admission of evidence

purporting to prove the content of certain writings  *See* Doc. # 61.  Specifically, Plaintiff raises

the following objection to the introduction of anything other than the original document:

> How and when Popely's signature found its way onto the same page as Lint's
> claimed handwritten summary of the agreement attached to Ed Lint's Affidavit is
> unknown.  Since neither the original nor an authenticated copy of the document has
> been produced, and the person whose signature is purported to be affixed to the
> document contends the document is not the agreement, Laufen contends that the
> document was fabricated long after the dispute arose and does not contain the terms
> of the marketing support agreement.

*Id* at 3.

The Best Evidence Rule, codified in Federal Rule of Evidence 1002, provides: "To prove

the content of a writing, recording, or photograph, the original writing, recording, or photograph

is required, except as otherwise provided in these rules or by Act of Congress."  Pursuant to

Fed.R.Evid. 1003, duplicates are admissible to the same extent as an original document unless

(1) a genuine question concerning the authenticity of the document is raised, or (2) it would be

unfair in the circumstances of the case to admit the original. In addition, an original is not

required if the original document has been lost or destroyed, unless the loss or destruction was in

bad faith.  Fed.R.Evid. 1004.

Defendant opposes Plaintiff's motion, and responds in relevant part that it will produce the original signed handwritten term sheet (Lint Exhibit 4) at trial.  Doc. # 66.  Further, Defendant proffers that Popely will testify as to the authenticity of his signature on Lint Exhibit 4 and his recollection as to the approximate time frame in which he wrote the terms and signed the document.  *Id*.  Considering Plaintiff's challenge to the introduction of any duplicate form of Lint Exhibit 4, and in light of Defendant's response to provide the original at trial as well as to introduce testimony to authenticate the document, the Court will deny Plaintiff's motion without prejudice.  That said, however, the parties should know that only the original authenticated document will be admissible into evidence at trial.

C.      Doc # 62

Plaintiff moves to exclude evidence of terms of a written proposal from Laufen to Lint Tile that was made in May of 2007, and subsequently revoked prior to the June 28, 2007 agreement.  On or about May 30, 2007, Popely, on behalf of Plaintiff, sent Defendant Edward Lint a document identified as "Lint Tile First Order Agreement Letter May 07".  *See* Doc. # 39-2 at ¶ 9.  That document noted, in relevant part, that Plaintiff "will supply 500 displays at no charge."  *Id*.  The document further noted that Plaintiff would pay a rebate to Lint Tile after the first order was shipped, and that the rebate would be either 20 % or 30 % depending upon the type of tile ordered by Lint.  *Id*.  Additionally, Plaintiff offered a price discount to Lint Tile of, once again, 20 % or 30 % depending upon the type of tile ordered.  *Id*.  Apparently, those terms were agreeable to Defendant, and Lint Tile proceeded to place orders for tile in excess of one million dollars between May 31 - June 4, 2007.  After those orders were placed, however

Plaintiff, informed Defendant that it could not honor the rebate amounts previously offered and price discounts, at which point, the deal fell apart.[5]  The state of the arrangement between the parties at that time subsequently evolved into the purported June 28, 2007 merchandising support agreement.

Plaintiff now seeks to preclude Defendant's introduction of the terms of the May, 2007, interaction, particularly the "supply 500 displays at no charge" term, on the basis of relevance. *See* Doc. # 63.  More specifically , Plaintiff argues that because there was no agreement reached in May of 2007, and because said term was not expressed in writing in the June 28, 2007, agreement (under either version), that any reference to the irrelevant term could create the danger of unfair prejudice, the confusion of issues, misleading the jury, or waste time.  *Id*.

For its part, Defendant now seems to contend that there was a contract formed in May, 2007, a contract that was unilaterally cancelled by Plaintiff.  *See* Doc. # 66.  This seems to fly in the face of Edward Lint's own deposition testimony referenced herein, as well as the Defendant's position throughout the course of the litigation that the Lint Exhibit 4 version of the marketing support agreement from the end of June, 2007, was the agreement at issue here.  To that end, Plaintiff's motion in limine to preclude Defendant from introducing evidence that the May 30, 2007, written offer was an enforceable contract between the parties.  The analysis does not stop there, however.

---

[5]     Although he was apparently unhappy with this development at the time, Edward Lint subsequently acknowledged that Plaintiff's characterization that the interaction between the parties was a negotiation that did not result in a contract.  *See* Doc. # 42 at Exh. 2, Dep. Tr. of Edward Lint. ("Q: So would it be fair to say that this initial - this first attempt at a deal didn't come to a deal?  A: Correct.  Right.  Q: You could have both walked away and nobody owed anybody anything?  A: Yep.")

One of the key issues in this case concerns the question of which party was responsible to pay the freight charges to have the display boards delivered to Lint Tile's facility.  The marketing support agreement included no express provision regarding the freight charges.  Plaintiff's position is simply that "it is custom in the industry that when the contract is silent as to freight, the cost of freight is to be paid by the purchaser", which would be Defendant.  *See* Doc. # 48 at ¶ 21.   Defendant, on the other hand, contends that the "supply 500 displays at no charge" carried forward from the May 30, 2007 offer sheet, and therefore, Plaintiff was responsible.  Doc. # 66.

Unlike the term "Order $2,500,000" that was written into the agreement, there was no express term in the June 28, 2007 agreement regarding the payment of freight charges for the displays being manufactured by Brown Industries.  It is well settled in this Commonwealth that in the absence of fraud, accident, or mistake, parol evidence as to preliminary negotiations or oral agreement is not admissible in evidence if it adds to, modifies, contradicts, or conflicts with the written agreement between the parties. *Servomation Mathias Pa., Inc. v. Lancashire Hall, Inc.*, 442 Pa. 602, 276 A.2d 547 (1971); *Nicolella v. Palmer*, 432 Pa. 502, 248 A.2d 20 (1968); *Keyser v. Margolis*, 422 Pa. 553, 223 A.2d 13 (1966).  As noted herein, however, it is equally well settled that this general rule does not apply where the agreement is ambiguous.  In such a situation, parol evidence is admissible to explain the agreement and resolve ambiguities to ascertain the meaning of the parties. *Pavlich v. Ambrosia Coal Co.*, 441 Pa. 210, 273 A.2d 343 (1971); *In re Fessman's Estate*, 386 Pa. 447, 126 A.2d 676 (1956).  In *Carter v. Edwin J. Schoettle Co.*, 390 Pa. 365, 134 A.2d 908 (1957), the Pennsylvania Supreme Court held that where there is an integrated agreement, evidence of prior negotiations is inadmissible to show an intent at variance with the language of the written agreement, but extraneous evidence is

14

admissible to show local usage which would give a particular meaning to the language. However, in the absence of an express provision to the contrary, custom or usage, once established, is considered a part of a contract and binding on the parties though not mentioned therein, the presumption being that they know of and contracted with reference to it. *See Gallizzi v. Scavo*, 406 Pa. 629, 179 A.2d 638 (1962); *Leslie v. Pennco, Inc.*, 323 Pa.Super. 23, 470 A.2d 110 (1983); *Fisher v. Congregation B'Nai Yitzhok*, 177 Pa.Super. 359, 110 A.2d 881 (1955).

Here, there is no dispute that the term with respect to freight was not expressed in the language of the written marketing support agreement itself.  As such, Plaintiff relies upon the contention that custom of the industry could provide that term.  Defendant, on the other hand contends that evidence of prior negotiation with respect to this particular term, specifically that Plaintiff previously offered to "supply 500 displays at no charge" is relevant to the interpretation to the subsequent agreement.  On this particular point, the Court agrees with Plaintiff.  Despite the fact that the May 2007 negotiations included the term that freight was to have been paid by Plaintiff, the exclusion of such term in the June 28, 2007 writing does not render such previous negotiations to be illustrative of prior dealings sufficient between the parties to be admissible for the purpose of explaining the agreement.  Simply stated, the payment of the freight charges were offered in May, 2007, and not offered a second time with the June, 2007, agreement.  In such cases, the relevant Uniform Commercial Code provision adopted under Pennsylvania law, places the responsibility upon the buyer (Defendant Lint Tile) to make arrangements for shipping and paying the costs of shipping.  *See* 13 Pa.C.S.A. § 2308.  As such, the granting of Plaintiff's motion in limine will include the introduction of evidence regarding the past negotiations, including that Plaintiff had previously offered to "supply 500 displays at no charge."

15

**CONCLUSION**

In accordance with the foregoing, Plaintiff's MOTION IN LIMINE TO CONSTRUE

CONTRACT AS REQUIRING LINT TO PURCHASE A MINIMUM OF $2.5 MILLION

PURSUANT TO THE AGREEMENT, Doc. # 58, and PLAINTIFF'S MOTION IN LIMINE TO

EXCLUDE EVIDENCE OF TERMS OF MAY 2007 OFFER THAT DID NOT BECOME A

CONTRACT, Doc. # 62, will be granted, and PLAINTIFF'S MOTION IN LIMINE TO

PRECLUDE LINT'S VERSION OF THE AGREEMENT, Doc. # 60, will be denied provided

the original authenticated document is produced.  An appropriate order follows.


McVerry, J.

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **LAUFEN INTERNATIONAL, INC.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) **2:10-cv-199** |
| **v** | ) |
| | ) |
| **LARRY J. LINT FLOOR & WALL COVERING,** | ) |
| **CO., INC.,** | ) |
| | ) |
| **Defendant.** | ) |

## ORDER OF COURT

AND NOW, this 27th day of April, 2012, in accordance with the foregoing Memorandum

Opinion, it is hereby ORDERED, ADJUDGED, and DECREED that:

1.   Plaintiff's MOTION IN LIMINE TO CONSTRUE CONTRACT AS

REQUIRING LINT TO PURCHASE A MINIMUM OF $2.5 MILLION

PURSUANT TO THE AGREEMENT, Doc. # 58, is GRANTED;

2.   PLAINTIFF'S MOTION IN LIMINE TO PRECLUDE LINT'S VERSION

OF THE AGREEMENT, Doc. # 60, is DENIED WITHOUT

PREJUDICE; and,

3.   PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE EVIDENCE OF

TERMS OF MAY 2007 OFFER THAT DID NOT BECOME A

CONTRACT, Doc. # 62, is GRANTED.

BY THE COURT:


s/  Terrence F. McVerry
United States District Court Judge

17

cc:      Dennis R. Callahan, Esquire
         Email: dcallahan@dallergreenberg.com
         John P. Liekar , Jr., Esquire
         Email: jliekar@ymlz.com
         Mark E. Ulven, Esquire
         Email: mulven@hrslaw.com